UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL L. ANTHONY,

        Petitioner,

                                                CASE NO: 5:10-CV-14474
v.                                              HONORABLE JOHN CORBETT O'MEARA

MITCH PERRY,

        Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**I.    Introduction**

Michigan prisoner Michael L. Anthony ("Petitioner"), currently confined at Chippewa Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for a writ of habeas corpus, asserting that he is being held in violation of his constitutional rights. Petitioner was found guilty of assault with intent to commit murder, Mich. Comp. Laws § 750.83, in Wayne County Circuit Court and sentenced to imprisonment for sixty to ninety years. In his pleadings, Petitioner raises a sentencing issue and claims concerning his right to present a defense and his right to effective assistance of counsel. For the reasons that follow, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability, but grants leave to proceed *in forma pauperis* on appeal.

**II.     Facts and Procedural History**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals:

> Defendant's convictions arise out of an altercation involving Eddie Brown. Defendant lived with his girlfriend, Kim Martin, and her children at a residence rented from Brown in the city of Detroit. On November 21, 2004, Brown was cleaning the house after having evicted Martin when Martin stopped her vehicle in front of the residence. Defendant, Martin's two children, and a pit bull were inside the vehicle with Martin. The dog jumped out of the vehicle and began chasing Brown, who was standing in the driveway. Martin and defendant then got out of the vehicle and chased Brown along with the dog. Martin struck Brown with a crowbar that she was carrying, and he fell to the ground. He was unable to remember what occurred thereafter. Witnesses observed defendant stab Brown in the back with a knife as he was falling. Brown sustained a spinal cord injury that rendered him unable to walk again. Martin was convicted of assault with intent to do great bodily harm less than murder for her role in the incident.

*People v. Anthony*, No. 278577, 2008 WL 4958803, at *1 (Mich. Ct. App. Nov. 20, 2008). These facts are presumed correct on habeas review pursuant to 28 U.S.C. §2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner was not arrested until November 10, 2006. Following a jury trial in 2007, the jury returned a unanimous verdict, finding Petitioner guilty, as charged, of assault with intent to commit murder. On May 23, 2007, the trial court sentenced Petitioner as a habitual offender, fourth offense, to imprisonment for sixty to ninety years.

Petitioner appealed his conviction to the Michigan Court of Appeals, raising the following claims:

> I. The trial court denied Mr. Anthony[] due process and a fair opportunity to present his defense of mistaken identity when it failed to admit [a] prior inconsistent sworn statement and when it refused a reasonable jury

request to review that same testimony, where the prior testimony contradicted trial testimony on the critical question of Mr. Anthony's identity as the offender.

II. Mr. Anthony was deprived of the effective assistance of counsel and the right to confront witnesses when his trial attorney expressly refused to cross-examine a material witness, thus failing to expose inconsistencies with his identification of Mr. Anthony as the assailant.

III. Mr. Anthony is entitled to resentencing because his guidelines were erroneously scored, and his 60 year minimum sentence is a departure from his correctly scored guidelines of 14.25 to 47.50 months.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished, *per curiam* opinion. *Anthony,* 2008 WL 4958803. Petitioner also filed an application for leave to appeal in the Michigan Supreme Court, which denied leave to appeal in a standard order. *People v. Anthony,* 485 Mich. 992 (2009) (table).[1]

Petitioner subsequently raised several new claims in a motion for relief from judgment in the state trial court. While his post-judgment motion was pending in state court, Petitioner filed his federal habeas petition, raising the same claims that he presented to the state court on direct review. (Pet., ECF No. 1.) Petitioner moved to stay his habeas petition while he exhausted state remedies for the additional issues. (Pet'r's Mot. for a Stay, ECF No. 8.) The Court granted Petitioner's motion for a stay and closed this case for administrative purposes on April 8, 2011. (Order, ECF No. 9.)

Shortly thereafter, the state trial court decided the motion for relief from

---

[1] Justice Diane M. Hathaway recused herself because she was the presiding trial court judge. Justice Stephen J. Markman concurred with the majority's decision to deny leave to appeal, but wrote separately to acknowledge the merit in Petitioner's sentencing claim. Justice Markman stated that, if relief were to be granted, it had to be in response to a motion for relief from judgment, because trial counsel expressed satisfaction with the scoring of the sentencing guidelines and Petitioner did not allege that trial counsel was ineffective for failing to correct the scoring error.

judgment, granting Petitioner relief on his sentencing claim and denying relief on the other claims. Petitioner did not appeal the trial court's decision to a higher state court. Instead, he moved to reopen this case, requesting the Court to deem unsuccessful his recent attempts to exhaust state remedies. (Pet'r's Mot. to Reopen Case, ECF No. 12.)

The Court reopened this case and ordered Respondent to answer the petition. (Order, ECF No. 13.) Respondent filed an answer to the petition, contending that the petition should be dismissed on procedural grounds and/or should be denied for lack of merit. (Resp., ECF No. 15.) Petitioner filed a reply, alleging several new claims. (Reply, ECF No. 16.) The new claims are waived because Petitioner raised them for the first time in his reply brief. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), *cert. denied*, __ U.S. __. 132 S. Ct. 498 (2011).

### III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). As amended by the AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

A decision of a state court is "contrary to" clearly established federal law if it

"'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza,* 540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith,* 539 U.S. 510, 520 (2003) (quoting *Williams,* 529 U.S. at 413); *see also Bell,* 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins,* 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett,* _U.S._, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and *Woodford v. Viscotti,* 537 U.S. 19, 24 (2002) (*per curiam*)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* _U.S._, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing

*Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412; *accord Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (end citations omitted); *Andrade,* 538 U.S. at 71-72 (stating that "'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision").

Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Richter,* 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases . . . so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002); *see also Mitchell,* 540 U.S. at 16. While the

requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox,* 340 F.3d 667, 671 (8th Cir. 2003), and *Dickens v. Jones,* 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. §2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.*; *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review, moreover, is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, _U.S._, __, 131 S. Ct. 1388, 1398 (2011).

## IV. Analysis

### A. The Right to Present a Defense

Petitioner first claims that the trial court violated the Fourteenth Amendment to the United States Constitution by not allowing him to present his defense of mistaken identity.

#### 1. Background

Petitioner's claim arises from Kenneth Homesly's testimony at Petitioner's trial. The prosecution called Kenneth Homesly in their case-in-chief. Homesly testified that he saw Petitioner stab the victim in the back and that he had seen Petitioner "[p]robably once or twice" before the day of the incident. (Trial Tr. vol. 2, 138-40, 142, May 3, 2007.)

Later in the trial, counsel for Petitioner recalled Homesly for the defense. (Trial Tr. vol. 3, 156, May 7, 2007.) Counsel confronted Homesly with his prior testimony from Kim Martin's trial, where he testified that he had not seen Petitioner before the incident. (*Id.* at 157-69). After the prosecution stipulated that Homesly had testified at Martin's trial, defense counsel moved to admit lines four through nine of his prior testimony as evidence. (*Id.* at 165). Before the trial judge could rule on the motion, defense counsel continued pressing Homesly on his inconsistent testimony from Martin's trial. (*Id.* at 165-69). Counsel did not renew his motion to admit that portion of the transcript, and the trial court never ruled on it.

The issue did not come up again until after the jury was charged and began its deliberations. After about one-half hour of deliberation, the jury sent a note saying, "We need transcript from Kim Martin trial, pages 42/45." (Trial Tr. vol. 4, 14, May 8, 2007.) Defense counsel asked the trial court to grant the jury's request, but the prosecution argued that the court should instruct the jury to rely on its collective memory because the transcript had never been admitted into evidence. (*Id.* at 14-15).

Because the transcript from Kim Martin's trial was not admitted in evidence, the trial court ruled that it would not be provided to the jury. (*Id.* at 15). The court did, however, agree to read the transcript back to the jury if the jury stated that it could not remember the testimony. (*Id.* at 15-17.) Defense counsel asked the court to tell the jury that it could have the transcript read back on request, but the judge declined to inform the jury of that option. (*Id.* at 17.*)*

### 2. The Parties' Arguments and the State Court's Ruling

Petitioner asserts that the trial court violated his rights to due process and to

-8-

present a defense by failing to admit as substantive evidence the excerpt of Kenneth Homesly's testimony at Kim Martin's trial. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner failed to preserve the issue for appellate review by seeking to admit Homesly's previous testimony as substantive evidence. According to the Court of Appeals, defense counsel sought to admit Homesly's previous testimony only for impeachment purposes, and evidence used only for impeachment purposes is not substantively admissible. The Court of Appeals went on to say that, "[r]egardless of the purpose for which defense counsel sought to admit the evidence, . . . the record shows that the trial court permitted the jury to consider it as substantive evidence," and, therefore, Petitioner had failed to establish plain error.[2]

Petitioner also asserts that the trial court erroneously refused the deliberating jury's request to review Homesly's testimony at Kim Martin's trial and improperly foreclosed later review by not advising the jurors that the court would read the testimony back to them if they could not remember it. The Michigan Court of Appeals disagreed. It determined that the trial court did not abuse its discretion by denying the jury's request and that the trial court did not foreclose the possibility that Homesly's previous testimony could be re-read at a later time.

### 3. Analysis

---

[2] Because the Court of Appeals ruled that Petitioner did not preserve his claim for appellate review, Respondent contends that Petitioner's claim is waived and procedurally defaulted. Procedural default is not a jurisdictional limitation, *Pudelski v. Wilson,* 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied,* _U.S._, 130 S. Ct. 3274 (2010), and the state court's decision was not unreasonable. Accordingly, this Court opts to address the substantive merits of Petitioner's claim and to excuse the alleged procedural default.

Petitioner raises his claims primarily as state law arguments under the Michigan Court Rules, the Michigan Rules of Evidence, and Michigan case law. It is not the role of a federal habeas court to examine state court determinations of state law questions. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007). "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

It was not fundamentally unfair for the trial court to decline to admit the transcript from Kim Martin's trial because, as the Michigan Court of Appeals pointed out, the trial court allowed the jury to consider Homesly's previous testimony as substantive evidence. (Trial Tr. vol. 4, 9, May 8, 2007.) As for the denial of the jury's request to review Homesly's testimony at Kim Martin's trial, the trial court was following a state rule which states that, "'[a] trial court is not to provide the jury with unadmitted evidence.'" *Anthony,* 2008 WL 4958803 at *2 (quoting *People v. Davis,* 216 Mich. App. 47, 57 (Mich. Ct. App. 1996)). The trial court's response to the jury, moreover, "did not foreclose the possibility that Homesly's previous testimony could be reread at a later time, and in fact the trial court stated that it would consider rereading the testimony if the jury so requested." *Id.*

The Due Process Clause requires "that criminal defendants be afforded a

-10-

meaningful opportunity to present a complete defense," *California v. Trombetta*, 476 U.S. 479, 485 (1984), but the right to present a defense does not mean the defendant has the right to include every piece of evidence he wants admitted. *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986). The Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted." *Id.* at 690.

In this case, Petitioner has failed to demonstrate that the trial court's denial of the jury's request and the court's failure to admit in evidence the excerpt from Kim Martin's trial deprived him of his right to present a defense. Although the excerpt of the transcript was not admitted as an exhibit, defense counsel was permitted to impeach Homesly with his prior testimony. Thus, the jury was made aware that Homesly gave prior inconsistent testimony at Martin's trial, and Petitioner's right to present a defense was not violated. Even if the failure to admit the transcript was error, it was cured when the judge allowed the jurors to consider the testimony as substantive evidence during their deliberations.

The failure to grant the jury's request for the excerpt from the transcript of Martin's trial also did not amount to constitutional error. The trial court informed the jurors at the beginning of the trial that they would not be taking a copy of any transcript into the jury deliberation room with them and that they should pay careful attention to everything that was said in the courtroom. (Trial Tr. vol. 2, 22, May 3, 2007.) When the issue arose at the conclusion of the trial, the court was prepared to read the testimony to the jury on request. It was discretionary with the trial court to determine whether the

jury's request should have been granted. *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986).

Petitioner has failed to establish that the trial court rendered his trial "fundamentally unfair." *McAdoo,* 365 F.3d at 494. His right to present a defense under the Due Process Clause of the Fourteenth Amendment was not violated. Therefore, habeas relief is not warranted on the basis of claim one.

### B. Ineffective Assistance of Counsel

Next, Petitioner claims that his trial attorney was ineffective for refusing to fully cross-examine Alvin Smith. Smith was called as a witness during the prosecution's case-in-chief. (Trial Tr. vol. 2, 211, May 3, 2007.) Shortly after cross-examination began, Smith and Petitioner's counsel started to argue. Smith told defense counsel not to yell at him, and defense counsel asked the court to instruct Smith to answer his questions and not point his finger at him. (*Id.* at 220-21.) The trial court told counsel that he could not continue questioning Smith until he could do it "in a civil manner." (*Id.* at 221-23). Counsel was unable to tell the court whether he could proceed calmly; so the court allowed Smith to step down from the witness stand. (*Id.* at 223-24.) Despite being on defense counsel's witness list, Smith was never recalled to testify.

Petitioner asserts that his counsel's failure to cross-examine Smith, a material witness, resulted in prejudice and denied him a fair trial. Petitioner argues that cross-examination would have shown that Smith's statement to the police never mentioned the fact that he knew the man who was with Ms. Martin when the assault occurred or even that a man was with her at the time. According to Petitioner, effective cross-examination also would have revealed that Smith's description of the man he knew as

-12-

"Mike" did not match Petitioner's actual physical appearance.

Respondent contends that, because Smith was not an eyewitness to the assault, the jury was unlikely to give his testimony as much weight as other witnesses who testified. Furthermore, argues Respondent, having elicited discrepancies in Smith's description of the assailant from another witness, cross-examination of Smith on the same issue would have been cumulative and not likely to affect the outcome of the trial.

The Michigan Court of Appeals denied relief on Petitioner's claim, finding that Petitioner had failed to demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. The court explained:

> Defendant has failed to establish that counsel's refusal to question Smith prejudiced him considering other witnesses' identifications of defendant as the perpetrator. Brown testified that Martin, defendant, and their pit bull chased him immediately before Martin struck him with a crowbar and he blacked out. Hornesly identified defendant as the person who stabbed Brown with a knife. Hornesly pulled defendant off Brown and exchanged words with him before defendant ran back across the street and reentered Martin's vehicle. Lavita Dorsey also witnessed the stabbing, identified defendant as the perpetrator, and testified that she had seen defendant on a daily basis before the incident. Smith, however, did not witness the stabbing. Rather, he testified that he saw defendant and Martin running toward a car while Brown was lying on the ground. He maintained that defendant lived next door to him for approximately one year before the incident. (Tr II, 211-214.) Further, during defense counsel's cross-examination of Sergeant Avis Taylor, counsel elicited that Smith's description of the perpetrator differed from the descriptions that other witnesses provided. Therefore, we cannot conclude that counsel's failure to cross-examine Smith prejudiced defendant. Defendant has failed to demonstrate a reasonable probability that, but for counsel's failure, the result of the proceeding would have been different. [*People v.*] *Toma*, [462 Mich. 281, 302-03 (Mich. 2000)].

*Anthony,* 2008 WL 4958803 at *3.

### 1. Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme

Court set forth a two-part test to determine whether a habeas petitioner received ineffective assistance of counsel. First, a Petitioner must show that his counsel's performance was deficient. *Id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the Petitioner must show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

To satisfy the performance part of *Strickland*, a habeas petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable personal judgment." *Id.* at 690. On habeas review, the court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden is on the petitioner to overcome the presumption that the challenged action was sound trial strategy. *Id.* at 689.

To satisfy the prejudice part of the *Strickland* test, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To be a reasonable probability, it must be sufficient to undermine confidence in the outcome. *Id.* "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by *Strickland* and §2254(d) are both 'highly deferential,'

-14-

and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 2. Application

The Court agrees with Petitioner that it was deficient performance for defense counsel to refuse to cross examine Alvin Smith simply because counsel was unable to say whether he could be civil to Smith. Nevertheless, Petitioner is unable to show a reasonable probability that, but for counsel's failure to cross-examine Smith, the result of his trial would have been different. As the Michigan Court of Appeals recognized, both Homesly and Lavita Dorsey testified that they witnessed Petitioner stab the victim, whereas Smith did not witness the stabbing. Smith merely testified that he saw Petitioner running toward Martin's car while the victim was lying on the ground. Furthermore, differences between Smith's and the other witnesses' descriptions of the perpetrator were brought to the jury's attention during cross-examination of Detroit Police Sergeant Avis Taylor.

In conclusion, although defense counsel's failure to cross-examine Smith may not have been "sound trial strategy," Petitioner is unable to satisfy the prejudice portion of the *Strickland* test. Therefore, habeas relief is not warranted on Petitioner's ineffective-assistance-of-counsel claim.

### C. The Sentencing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in scoring the state sentencing guidelines. Respondent contends that this issue is

moot because the trial court granted Petitioner relief on his sentencing claim. Petitioner does not dispute Respondent's claim that this issue has been resolved, and records maintained by the Michigan Department of Corrections on its official website confirm that Petitioner's minimum sentence has been reduced from sixty years to forty-seven and a half years.[3] The sentencing issue has "lost its character as a present, live controversy" and therefore is moot. *Hall v. Beals*, 396 U.S. 45, 48 (1969). The Court has no jurisdiction to consider it. *Demis v. Sniezek,* 558 F.3d 508, 512 (6th Cir. 2009).

## V.  Conclusion

For the reasons stated above, the state appellate court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. The Court therefore concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by

---

[3] *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=184517.

demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37.

Having considered the matter, and for the reasons given above, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court **DECLINES** to issue a certificate of appealability. However, if Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because he was permitted to proceed *in forma pauperis* in the District Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3).

**IT IS SO ORDERED.**

s/John Corbett O'Meara
United States District Judge

Date: October 24, 2012

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 24, 2012, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager